Dolores **BONEY**, et al., Respondent,

v.

Joshua **WORLEY**, et al.; Defendant

Cass County, Missouri, Appellant.

Nos. WD 67895, WD 67911.

Missouri Court of Appeals,
Western District,
Division Two.

June 24, 2008.

Application for Transfer to Supreme Court Denied Sept. 2, 2008.

As Modified Sept. 2, 2008.

Application for Transfer Denied Sept. 30, 2008.

---

Brandon D. Mizner, Kansas City, MO, for appellant.

Nikki Cannezzaro, Kansas City, MO, for defendant, Hollis Hanover.

James C. Johns, Clinton, MO, for defendant, Joshua Worley.

Gary J. Willnauer, Kansas City, MO, for respondent.

Before RONALD R. HOLLIGER, P.J., HAROLD L. LOWENSTEIN, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

## Summary

Cass County appeals from the denial of its motion for judgment notwithstanding the verdict, and for the grant of a new trial to plaintiffs. Dolores Boney asks this court to grant her relief by remanding to the trial court to enter additur in her favor. She also requests that if additur is not granted and the trial courts grant of a new trial is not sustained, that this court grant a new trial because of the improper submission of a joint enterprise instruction. We affirm the grant of a new trial and the denial of JNOV.

## Factual and Procedural Background

On July 14, 2002, two cars collided at the intersection of 227th Street and Valley Road in rural Cass County. Mr. Aaron Boney was driving his parents' car on Valley Road. In the car with him were members of his family: his parents, Odie and Dolores Boney, and his sisters, Elizabeth and Cynthia Boney. Odie and Aaron Boney died in the accident, and the others in the Boney car suffered significant injuries. Mr. Joshua Worley operated the car traveling on 227th Street. Mr. Worley admitted that he was driving approximately 20 miles per hour over the posted speed limit. The intersection is uncontrolled: there were no signs on either road warning of an intersection or indicating the right of way. At the time of the accident, crops were growing in the field. These crops may have obscured the view of drivers traveling on the roads toward the intersection, preventing them from seeing traffic approaching on the cross-road. At that time the crops were approximately two feet tall.

The surviving Boney family members (the "Boneys") brought an action in the Cass County Circuit Court for damages against Mr. Worley, Cass County, and Mr. Hollis Hanover, as defendant ad litem for Aaron Boney. The action claimed that each defendant was negligent and that each defendant was responsible for the wrongful death of Mr. Odie Boney. The cause of action against Cass County was based on negligence for failure to properly maintain the intersection and its traffic control devices, and that the intersection was in a dangerous condition at the time of the accident. The Boneys argue that Cass County owed a duty to maintain and keep county roads safe and that its negligence arose for:

Failing to maintain stop signs, or any other traffic control devices at the intersection; failing to warn drivers of the hazardous intersection; failing to keep the intersection safe for drivers from all directions, failing to display adequate signage with regards to the intersection; failing to follow the guidelines of the Manual on Uniform Traffic Control Devices (MUTCD) as required under the Cass County Road and Bridge Department Policy.

During trial, testimony was presented from the Boney's expert, Mr. Joseph Blaschke, and Cass County's expert, Mr. William Lackey. Mr. Blaschke testified that the roads had significant sightline distance restrictions, which impaired the ability of drivers to see approaching drivers on the other road. Mr. Lackey testified that he had no disagreement with Mr. Blaschke's measurements but would have done a more precise analysis. Cass County Commissioner Jon Seabaugh testified that he knew that local residents did not stop at the intersection. He also testified that he was very familiar with the intersection and knew of the dip and rise on 227th Street to the west of the intersection. Mr. Worley testified that he was not distracted and did not see any vehicle approaching on Valley Road prior to the accident.

The Defendants each moved for directed verdict at the close of their evidence and

the close of all evidence; these motions were denied. At the conclusion of the trial, the jury returned a verdict for the plaintiffs but assigned no fault to the defendants and no damages for the plaintiffs on all charges except the wrongful death of Odie Boney. Plaintiffs objected to the other verdicts, which were resubmitted to the jury. The jury returned the verdicts with an assignment of fault but still assigned no damages. Plaintiffs apparently made no objection to these verdicts (see footnote 4 below). Plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV) to assign damages, which was denied. Defendants filed a motion for JNOV, which was denied. Plaintiffs also filed a motion for additur or in the alternative a motion for new trial. The motion for additur and the motion for new trial solely for damages were both denied, but a new trial on all issues was granted. The trial court reasoned that the amount of damages was unfair and the verdicts were inconsistent because the jury assigned liability to the defendants but found no damages.

Cass County appeals the denial of its motion for JNOV and the grant of a new trial to plaintiffs. Cass County argues that JNOV was appropriate because it had sovereign immunity and the plaintiffs did not meet the requirements for finding an exception to sovereign immunity. Cass County also argues that the motion for new trial was improperly granted because the basis for granting the new trial, the inconsistent verdicts, was not preserved. We affirm the judgment of the trial court.

### Legal Analysis

We review the denial of a motion for verdict notwithstanding the evidence to determine whether plaintiff made a submissible case. *Blue v. Harrah's N. Kansas City, LLC,* 170 S.W.3d 466, 472 (Mo.App. W.D.2005). A submissible case is made if the plaintiff presented substantial evidence for every fact essential to liability. *Id.* Substantial evidence is evidence that if true has a probative force upon the issues and from which the trier of fact can reasonably decide the case. *Id.* We view the evidence and all reasonable inferences in the light most favorable to the verdict and give the plaintiff the benefit of all reasonable and favorable inferences. *Id.* We consider only the evidence and favorable inferences supporting the verdict. *Id.* Where reasonable minds could differ on the verdict, we will not set aside the verdict. *Steele v. Evenflo Co., Inc.,* 178 S.W.3d 715, 717 (Mo.App. E.D.2005).

In its first point, Cass County argues that JNOV should have been granted because it has sovereign immunity. Its sovereign immunity arises because a county has no duty to erect stop signs at rural intersections, and an unsigned rural intersection is not a dangerous condition. Cass County argues that a decision not to sign a rural intersection does not create a dangerous condition. The county cites the concurring opinion of Judge Smart for the proposition that "[a]n uncontrolled intersection is *not necessarily* a dangerous condition." *Williams v. Mo. Highway & Transp. Comm'n,* 16 S.W.3d 605, 614 (Mo. App. W.D.2000) (Smart, J., concurring) (emphasis added). They further cite the concurring opinion to support the proposition that, for a condition to be dangerous, more is required than the possibility that a collision will take place if someone does not follow the rules. *Id.* We find this argument unpersuasive because the opinion does not preclude a finding that an unsigned intersection might be in a dangerous intersection. Essentially, the concurring opinion indicates that there is no standing rule on whether an unsigned intersection is a dangerous condition and that the determination of such is dependent on the facts in the case. *Id.* at 614–15.

■ Furthermore, in a case where failure to warn of a dangerous condition is submitted to the jury, the exception to the waiver of sovereign immunity is inapplicable because it "allege[s] a dangerous condition generally as opposed to negligent design." *Ielouch v. Mo. Highway & Transp. Comm'n,* 972 S.W.2d 563, 566 (Mo.App. W.D.1998). In *Ielouch,* a roadway reached a hillcrest immediately before the driveway to a school. *Id.* at 564–65. The plaintiff was attempting to turn left into the school driveway, across the lane of oncoming traffic, when a car coming over the hill hit her. *Id.* at 564 n. 1. One of the allegations made by the plaintiff alleged was that the state had a duty to warn about the dangerous condition that the lack of adequate sightlines presented. *Id.* This court held that this allegation of a failure to warn of a dangerous condition "alleged a dangerous condition generally as opposed to negligent design." *Id.* at 566. The Boneys, like the Iemouchs, alleged failure to warn as one of the bases for recovery in their petition, in their presentation of facts, and in their jury instructions. This was sufficient to avoid the affirmative defense of sovereign immunity, insofar as application of section 537.600.1(2) is concerned.

■ In order to make a case under the dangerous condition exception to sovereign immunity, plaintiffs must present evidence that a dangerous condition existed on the property, that plaintiffs injuries directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm, and that the public entity had actual or constructive notice.

Cass County argues that the intersection did not qualify as a dangerous condition exception to sovereign immunity under section 537.600.[1] Section 537.600.1(2) provides that an exception to sovereign immunity arises through

[I]njuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition, or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

We review to determine whether Plaintiffs made a submissible case, so we look to determine if the plaintiffs submitted substantial evidence to support their case and ignore any contrary evidence. *Blue,* 170 S.W.3d at 472. The Boneys presented substantial evidence that the road was in a dangerous condition. Their expert, Mr. Blaschke, testified that the road had a significant sight distance restriction that obscured the view of approaching vehicles. Cass County's expert, Mr. Lackey, stated that he had no dispute with Mr. Blaschke's measurements. Mr. Worley testified that he was not distracted and could not see anyone driving toward him on Valley Road prior to the accident. These sightlines were problems regardless of what crops were growing or how tall the crops had grown because the height of the fields caused sightline problems without any crops. Mr. Blaschke testified that the sightline distance was certainly less than the minimum required by the AASHTO [2]

---

**1.** All statutory references are to RSMo 2000.

**2.** American Association of State Highway and Transportation Officers.

standard of 140 feet and was probably about 125 feet.

■ Cass County further states that waiving sovereign immunity under the statute is to be strictly construed, and the burden is on the plaintiffs to establish an exception to the general rule. This is true, but it is clear that a road in a dangerous condition is sufficient to waive sovereign immunity and that limited sightline distances create a dangerous condition in the road. *See Ielouch*, 972 S.W.2d at 565–66.

■ Cass County also states that the injury did not result from any alleged dangerous condition because the careless driving of Aaron Boney and the illegal and careless driving by Mr. Worley caused the accident. Missouri state law operates to assign the right of way in unsigned intersections to the driver on the right. However, the law in Missouri is clear that a driver's failure to yield is insufficient by itself to negate the element of causation from the dangerous condition exception to sovereign immunity. *Hensley v. Jackson County*, 227 S.W.3d 491, 496 (Mo. banc 2007). The government actor's negligence need not be the sole cause of the injury, "as long as it is one of the efficient causes thereof, without which injury would not have resulted." *Id.* (citation and internal quotation marks omitted). We review to determine whether a submissible case has been made and ignore contrary evidence. *Blue*, 170 S.W.3d at 472. The Boneys submitted substantial evidence that the dangerous condition of the intersection was the cause of the injury. Mr. Worley testified that he did not see the Boneys' vehicle until the very last moment. Mr. Blaschke testified that the sightline distance was improper. From this a jury could have inferred that the sightline distance caused the accident, even though Mr.

Worley was exceeding the speed limit, because Mr. Worley and the Boneys would have been aware of each other much sooner, and the accident would have been avoided.

Cass County argues that there was also no reasonably foreseeable risk because there had never been an accident at this site in the more than twenty years that the county was responsible for the intersection.[3] Mr. Blaschke testified that sightline distances are important so that drivers on the roads can see each other and have an opportunity to stop. Whether there had been an accident before does not indisputably establish for the purposes of a JNOV motion whether it is reasonable to expect that an accident could occur at an intersection with limited sightlines.

Finally, Cass County claims that it had no *actual or constructive notice* of a dangerous condition. Cass County admits that it knew the intersection was unsigned but claims that this mere knowledge is insufficient because an unsigned intersection is not inherently dangerous. In this case officials from Cass County testified that they had driven through the intersection in question. They thus were aware or should have been aware of the limited sightlines and the dangerous condition this created. Cass County's first point is denied.

■ In its second point Cass County claims the Boneys cannot challenge the inconsistent verdicts accepted by the trial court because they failed to object and ask the jury to reconsider before the jury was excused, and, therefore, the trial court should not have granted a new trial. The Boneys objected to the first round of verdicts, which found for plaintiffs but as-

---

**3.** The county took control of the intersection in 1974. Prior to that the local township maintained it. A search of the records of the township did not reveal any accidents occurring there prior to 1974.

signed no fault to defendant's and awarded zero dollars in damages, but did not object after the second round of verdicts, which resulted in fault being assigned but still did not result in any damages awarded. They mentioned immediately prior to the return of the second round of verdicts that there was sufficient evidence to find for damages. There was no objection to the second round of verdicts,[4] and the court accepted the verdicts and dismissed the jury.

 "[A] claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged or that claim is waived." *Id.* at 474. However, a trial court has discretion to grant a new trial on account of any erroneous ruling, whether an objection has been made or not. *MFA Oil Co. v. Robertson Williams Transp., Inc.*, 18 S.W.3d 437, 440 (Mo.App. W.D.2000) (quotation marks omitted). We can find no authority that requires the trial court to invoke waiver against a party in such instances. *See id.* Furthermore, [t]rial courts have broad discretion to grant a new trial because the verdict was against the weight of the evidence. *Laws v. St. Lukes Hosp.*, 218 S.W.3d 461, 467 (Mo.App. W.D.2007)(quotation marks omitted). We will review the grant of a new trial on such a basis only if there has been a manifest abuse of discretion, because the trial court is in a better position to weigh the evidence. *Id.* Such grants are more likely to be upheld than denied. *Id.* We will view all inferences and evidence in the light most favorable to the trial courts decision. *Id.* at 467–68. If substantial evidence supports a verdict for the party granted a new trial, discretion was not abused. *Id.* at 468.

The issue of inconsistent verdicts was waived for appellate review. However, we find nothing in the law that prevents the trial court from granting a new trial because the verdict was against the weight of the evidence based on the inconsistent verdicts. The trial court stated in its grant of a new trial that the verdict was against the weight of the evidence because the jury failed to award any damages "despite the unequivocal evidence of injury causally connected to the accident." This was not an abuse of discretion because, although there was evidence of prior and subsequent injuries, there was substantial evidence that plaintiffs were injured in the accident. Numerous medical bills were presented in evidence along with medical records linking the injuries treated to the accident. Thus, substantial evidence was presented linking the injuries to the accident and establishing the expenses due to the accident. The new trial was properly granted. Cass County's second point is denied.

 The Boneys argue that additur should have been applied. Additur is set forth by statute. Section 537.068, although not denoting it additur, defines a procedure, commonly known as additur, as

---

4. We note that the transcript of the trial is filled with holes where the statements made were indiscernible. In the past these situations have warranted a remand to perfect the record, with the caveat that if it cannot be perfected there should be a new trial. *Loitman v. Wheelock*, 980 S.W.2d 140, 141–142 (Mo.App. E.D.1998.). We note that for the first point, the record was sufficient to reveal a submissible case. Because we only look to determine if there was substantial evidence supporting submission of the case, without looking at contrary evidence, the deficiencies in the record can be overlooked. However, for the second point, during the time the jury was deliberating and after it returned its verdicts the second time, the gaps in the record were ill-timed, and make it difficult to determine exactly what happened. It is unclear from the record whether an objection was made. We proceed as though no objection was made.

follows: "A court may increase the size of a jury's award if the court finds that the jury's verdict is inadequate because the amount of the verdict is less than fair and reasonable compensation for plaintiff's injuries and damages."

■ The doctrine of additur is a corollary of remittitur, and encompasses the same principles, therefore it may be analyzed in the same way. *Norris v. Barnes,* 957 S.W.2d 524, 528 n. 3 (Mo.App. W.D.1997). There are two situations in which an appeal for an inappropriate verdict amount arises:

(1) where the verdict is simply disproportionate to the proof of injury and results from an honest mistake by the jury in assessment of the evidence and, (2) where the verdict's excessiveness is engendered by trial error or misconduct and thus results from the bias and prejudice of the jury.

*Bodimer v. Ryan's Family Steakhouses, Inc.,* 978 S.W.2d 4, 9 (Mo.App. E.D.1998). In the first situation, no retrial is required and additur is sufficient. *Id.* In the second situation, where prejudice or bias has been shown, the only remedy is a new trial. *Id.* In this case, one of the trial court's reasons for granting a new trial was its determination that the jury had considered insurance payments in reaching its verdicts. Although no information about insurance was presented, the jury indicated its thoughts when it asked for information about the insurance during its deliberations. The trial court is in a better position to determine whether the jury was biased in this process; by granting a new trial, the trial court indicated that the jury's verdict was biased, and the remedy is a new trial.

The Boneys further argue that they should have been given a new trial because a joint enterprise instruction was improperly submitted to the jury. We have already granted a new trial, and the determination of whether an instruction should be submitted is dependent on the evidence presented at trial. Although this issue may arise again on retrial, whether substantial evidence to support submission of the instruction is presented is dependent on the evidence on retrial. Thus, we will not address this issue.

For the foregoing reasons, we affirm the finding of the trial court and remand for a new trial.

RONALD R. HOLLIGER, P.J., and HAROLD L. LOWENSTEIN, J. concur.