Richard BANNER, a minor child by and through his duly appointed conservator, Joy BOLDUC, Appellant,

and

Oksun Sheaffer, Plaintiff,

v.

Beverly OWSLEY, Defendant,

and

Brandy Sheaffer and Brooke Sheaffer, Respondents.

No. SD 29802.

Missouri Court of Appeals, Southern District, Division Two.

March 8, 2010.

Eric M. Belk, Springfield, MO, for appellant.

Richard L. Schnake, Neale & Newman, LLP, Springfield, MO, Gary L. Smith, Steve Jackson, Smith Jackson, LLC, Lebanon, MO, for respondent.

NEAL QUITNO, Special Judge.

This is an appeal of a judgment apportioning the settlement proceeds in a wrongful death cause of action. Richard Banner, a minor child of Steven Sheaffer (decedent) appeals. He contends the apportionment was an abuse of discretion.

Decedent died as a result of injuries sustained in an automobile accident on September 28, 2007, involving Beverly Owsley (defendant). Decedent was survived by his mother, Oksun Sheaffer, his wife, Brandy Sheaffer, a minor daughter, Brooke Sheaffer, and a minor son, appellant Richard Banner.

Decedent's mother, Oksun Sheaffer, filed a petition for wrongful death against defendant. Decedent's wife, Brandy Sheaffer, and minor daughter, Brooke Sheaffer, by and through her next friend and conservator Brandy Sheaffer, filed a motion to intervene as plaintiffs in the wrongful death cause of action. The motion was granted and the parties were granted leave to intervene.

The parties, including the appellant, entered into a settlement agreement wherein defendant agreed to pay $250,000 in satisfaction of all claims for damages and causes of action of the named parties arising out of the September 28, 2007, automobile accident. Defendant filed a motion for approval of the settlement. An evidentiary hearing was held. The trial court entered an order approving the wrongful death settlement and judgment apportioning the settlement proceeds.[1] The trial court apportioned the settlement proceeds as follows: $150,000 to plaintiff Brandy Sheaffer (60%); $62,500 to plaintiff Brook Sheaffer (25%); $25,000 to plaintiff Oksun Sheaffer (10%); and $12,500 to appellant (5%).

Section 537.090[2] provides guidance for the court in determining the losses suffered as a result of wrongful death. It provides:

In every action brought under section 537.080, the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death ...

*Mid–Century Ins. Co.,* 937 S.W.2d 243, 245 (Mo.App.1996).

---

[1]. On the record before this court, appellant is within the class of persons entitled to sue for the wrongful death of his father, and as such, he had the right to participate in the apportionment proceeding and to appeal the apportionment judgment without the necessity of being joined as a party. *See Kavanaugh v.*

[2]. References to § 537.090 are to RSMo Cum. Supp.2006. Other statutory references are to RSMo 2000.

Although § 537.090 is directed toward a trial court's initial determination of damages, the factors are also applicable in determining the apportionment of losses pursuant to § 537.095.3. *Kavanaugh v. Mid–Century Ins. Co.,* 937 S.W.2d at 246.

Appellant was thirteen years of age at the time of decedent's death. The evidence before the trial court was that decedent had no contact with the appellant since appellant was four years of age. Appellant lived with and was cared for by his maternal grandmother, Joy Bolduc. There was evidence that decedent had provided no support, financial or otherwise, to appellant for over ten years. Testimony at the hearing indicated that decedent lived near enough to appellant that their phone numbers would have been in the same phone book. Ms. Bolduc testified decedent was ordered to pay child support to her daughter, appellant's mother. There was no evidence presented as to the amount of such child support order.[3] The evidence was that appellant's grandmother agreed to assume responsibility for appellant's health, education, and welfare when she filed for guardianship of appellant. Decedent's wife, Brandy, and best friend, John Martin, testified that decedent told them he had given up "his rights" to appellant, that appellant was in his past and he was "done" with him. There was no evidence from any party that decedent's parental rights and obligations to appellant had been terminated.

Decedent had been married to Brandy Sheaffer for about four-and-a-half years at the time of his death, although they started dating four years before marrying. He lived with Brandy, their almost four-year-old daughter, Brooke Sheaffer, and decedent's stepson, Mason Starnes. There was evidence from Brandy that decedent was actively involved in the lives of his daughter and stepson. About Brooke, Brandy said "[decedent] loved his daughter. He always wanted a girl, and Brooke was his—was his life." Brandy testified that decedent helped around the house, spent family time together, and wanted to have another child. She testified that their marriage had been "rocky" at times because of decedent's affairs and their separations, but after attempts at marriage counseling, the marriage was improving.

Decedent was employed at the time of his death earning approximately $35,000 per year, all of which was used to support Brandy, Brooke, and Mason. Brandy testified that decedent's death had placed a hardship on the family.

Evidence regarding decedent's relationship with his mother was presented. Decedent's mother is Korean. Decedent would help his mother with mail and documents she didn't understand. Decedent helped his mother anytime she called. Decedent also spent holidays with his mother.

Decedent's mother presented testimony contradictory to that of decedent's wife and best friend regarding decedent's relationship and intentions regarding the appellant. Decedent's mother testified that decedent wanted a relationship with appellant, but decedent's wife interfered with any relationship between decedent and appellant.

Appellant's maternal grandmother and guardian, Joy Bolduc, testified that appel-

---

**3.** Counsel for appellant questioned decedent's wife regarding a child support order in the amount of $216.00 per month and past child support in the amount of $44,656.00. The witness stated it was her understanding that decedent had "signed over" his rights to appellant and did not owe any child support.

Appellant's counsel also prepared and introduced into evidence a chart indicating that decedent owed appellant child support in the amount of $44,656.00 at the time of death. No other evidence was presented to support these amounts.

lant lived with her from birth. Appellant's mother lived somewhere in Texas.[4] She stated that the last time decedent came to see appellant was in the summertime when appellant was about four years old. They played in the front yard. She stated after that visit decedent paid no child support, provided no insurance or gifts, and never tried to see appellant on his birthdays.[5] Ms. Bolduc stated that appellant never said that he wanted nothing to do with his father. In fact, he said "plenty of times, especially when he started school", that he wanted a father, wanted to know who he was and why he wasn't around.

The trial court heard testimony from Brandy that she had received life insurance proceeds from decedent's death in the amount of $300,000. Brandy acknowledged she received $250,000 for herself, and that Brooke and Mason each received $25,000 from the life insurance. Brandy testified that Brooke received an additional $56,000 from another life insurance policy, and that Mason received the decedent's paid-off $10,000 truck.[6]

Appellant contends the trial court erred in apportioning only 5% of the settlement proceeds to him; that the erroneous apportionment was an abuse of the trial court's discretion. Appellant assigns error to the trial court in three areas. This court will address them in the following order. Firstly, he claims the trial court erred in attaching no weight to life insurance and gifts received by Brandy Sheaffer, Brooke Sheaffer, and Mason Starnes as set forth in Plaintiff's Exhibit # 1.[7] Appellant contends amounts received by these individuals relate to the losses suffered by the beneficiaries as set forth in Section 537.090.[8]

Secondly, appellant assigns error to the trial court's findings regarding past child support. Appellant argues the trial court erred in finding past child support amounts could not be calculated, were irrelevant to the apportionment, and could have been claimed against the decedent's estate. Appellant contends he was not required under the law to file a claim against decedent's estate and that sums were related to his losses under § 537.090. Appellant asserts the trial court misconstrued the law by imposing these additional burdens.

Finally, appellant claims that the trial court's apportionment of only 5% of the wrongful death proceeds for appellant was an abuse of discretion. In furtherance of the abuse of discretion claim, appellant contends the trial court erred in finding decedent did not want to have a relationship with his son; in failing to find that decedent "was waiting for his son to get older and find him for a relationship"; and in failing to find that decedent and appel-

---

4. Appellant's parents were never married and had only a brief relationship.

5. Child support was to be paid to Ms. Bolduc's daughter, and had not been assigned to her as guardian.

6. Brandy admitted that the truck had been paid for by decedent's mother.

7. Plaintiff's Exhibit # 1 showed pre-wrongful death settlement receipts of: $250,898 for Brandy Sheaffer ($250,000 from life insurance and monthly Social Security check of $898); $81,000 for Brooke Sheaffer (life in-

surance proceeds of $25,000 and $56,000); $35,000 for Mason Starnes ($25,000 from life insurance and a truck from decedent paid for by decedent's mother valued at $10,000); - $44,656 for appellant for unpaid back child support (the court gave no weight to this claim and found there was "no testimony as to when the child support order was entered, or how much support had been paid by Steven Sheaffer"); and $0 for Oksun Sheaffer, decedent's mother.

8. Mason Starnes was not entitled to wrongful death proceeds as a stepson, but was listed on Exhibit # 1 nonetheless.

lant would have a relationship in the future. Appellant asserts that the fact that decedent neglected his duty to "train, support and guide" appellant does not negate a continuing obligation to do so; that decedent's failure to do so does not equate with no loss to appellant, but rather compounded appellant's loss. He further asserts the trial court's apportionment of the settlement proceeds is against public policy and common sense in that it discriminates against an innocent child "for the neglectful dereliction of the child's parent's responsibilities," and favors "a recent spouse that did nothing to encourage the decedent to accept his fatherly responsibilities." Appellant contends the trial court's findings, and resulting apportionment, are not supported by the evidence.

Apportionment of wrongful death proceeds is governed by § 537.095.3. Section 537.095.3 provides that if a settlement is reached in a cause of action for wrongful death, then the trial court shall state the total settlement approved and apportion the damages "among those persons entitled thereto in proportion to the losses suffered by each as determined by the court." Those persons entitled to bring a cause of action for wrongful death include a decedent's spouse, mother, father, and children or any living descendents of any deceased children. § 537.080.1(1).

■ The apportionment of losses is within the sound discretion of the trial court; the court is not bound by a set percentage or minimum. *Parr v. Parr*, 16 S.W.3d 332, 336–37 (Mo. banc 2000); *Bridges v. Van Enterprises*, 992 S.W.2d 322, 326 (Mo.App.1999). "There is no minimum amount that must be awarded to any party designated as a taker" under Section 537.080. *Parr, supra*, at 337. In fact, it is within the trial court's discretion to apportion none of the damages to a party. *Wright v.Cameron Mut. Ins. Co.*, 908 S.W.2d 867, 869 (Mo.App.1995). The court

is required only to apportion the settlement proceeds in proportion to the losses it determines each person has suffered as a result of the decedent's wrongful death. § 537.095.3.

■ Regarding appellant's first point on appeal, he claims that the following finding by the trial court erroneously applied the law:

The Court does not attach any weight to those sums received by Brandy Sheaffer, Brooke Sheaffer and Mason Starnes as set forth in Plaintiff's Exhibit # 1, offered by Richard Banner and does not consider such collateral sources in apportioning the damages herein.

■ In a court-tried case, the judgment of the trial court must be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court agrees with appellant that failure to take into account $351,000 in life insurance proceeds (outlined in Exhibit # 1), benefiting decedent's wife, daughter, and stepson in determining the parties' pecuniary losses, is a misapplication of the law. In *Parr v. Parr, supra*, at 336, the court, in affirming a wrongful death apportionment for a decedent's spouse took into account the decedent's income, business assets, spouse's payment of funeral expenses and the fact that the surviving spouse had *no life insurance*. [Emphasis added.] The trial court in this case considered decedent's income and his wife's and daughter's reliance on his income in considering their pecuniary loss. Their life insurance proceeds should also have been considered.

■ This court also agrees with appellant's second contention that past-due child support owed the appellant should have been considered by the trial court in the

apportionment hearing. On the issue of future child support, the trial court found that "Steven Sheaffer was ordered by a Court to pay child support for the benefit of Richard Banner and the objection to such testimony and the amount of support owed is over-ruled," and, "Richard Banner was deprived of child support which would have been due from Steven Sheaffer after his death on September 28, 2007, at least until the 18th birthday of Richard Banner and as such Richard Banner has suffered a pecuniary loss occasioned by the death of Steven Sheaffer." However, on the issue of past-due child support the trial court found, "[t]he amount of back child support . . . is further irrelevant to the issue of apportionment." The trial court found that child support had been ordered, it found the amount owed, and it found that appellant suffered pecuniary loss from decedent's death. This court finds that future *and* past-due child support amounts are pecuniary losses suffered by appellant and should be considered by the trial court upon remand.

Appellant's third contention is that the trial court abused its discretion by apportioning only 5% of the wrongful death proceeds to appellant while decedent's daughter received 25%, wife received 60%, and decedent's mother 10%.[9] This court need not address the trial court's judgment in this regard, however, because upon remand, after considering the insurance proceeds and the past-due child support, the trial court may, in its discretion, reapportion the proceeds.

Nevertheless, this court observes that the trial court, in its findings, seemed to focus on the non-pecuniary factors in the statute from the decedent's perspective and not from the vantage point of the appellant:

> [Appellant] had not seen [decedent] since age 4 and did not remember his father. [Decedent] had not contacted [appellant] since age 4. [Decedent] provided no services, no companionship, no family bonding, no comfort, no instruction, no guidance, no counsel, no training and little support, although ordered to do so to [appellant] since age 4.

The plain language of § 537.080 requires the court to consider as nonpecuniary losses the "reasonable value of services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which *those on whose behalf suit may be brought have been deprived by reason of such death.*" [Emphasis added.] The statute requires the court to consider what the appellant has been deprived of by reason of decedent's death, not only what the decedent has failed to provide to date.

The following exchange occurred at the apportionment hearing between the attorney for appellant and the appellant:

Q: Would you tell us your full name and your date of birth?

A: Richard James Banner, June 22, 1994.

Q: And who's your dad?

A: Steven Sheaffer.

Q: Do you remember him?

A: No.

Q: And you didn't have much of a relationship with him?

A: No.

Q: Did you have any say in that?

A: No.

Q: When he died, you were 13 years old?

A: Yeah.

Q: Did you ever tell anybody that you didn't want a relationship with him?

A: No.

9. This was appellant's first point in its brief, but third for this court's consideration.

Q: Did you want a relationship with him?

A: Yes.

Q: Why?

A: I wanted to get to know him better.

Q: Were you going to do that?

A: Yeah.

Q: As you got older?

A: Yeah.

Q: It doesn't sound like, at least in the past, you had much in the way of a relationship. It sounds like it was not just rocky, it was nonexistent; right?

A: Yes.

Q: And if he changed and if he'd gotten—maybe matured a little bit and as you got older, do you think you guys could have developed a relationship?

A: Yes.

Q: Do you think you could have learned from him, probably taught him some things?

A: Yeah.

The court in *Keene v. Wilson Refuse, Inc.*, 788 S.W.2d 324, (Mo.App.1990), addressed the same issue as this court regarding how to evaluate nonpecuniary losses of surviving children of a decedent in the apportionment of wrongful death proceeds. The court in *Keene*, however, looked at the losses from the perspective of the surviving children, an analysis which can be considered in this case upon remand.

"Fixing a monetary value upon the loss suffered by a child deprived of future parental 'companionship, comfort, instruction, guidance, counsel, training' of necessity involves resort to speculation and subjectivity." *Id.* at 326. In attempting to measure the child's loss, the demonstrated need of the child for such intangibles is a factor to be considered. The benefits flowing to a child from the relationship with his or her father and the correlative loss sustained by reason of the father's death are not always susceptible of measurement simply by reference to the frequency of contact and the time of association. "The term 'quality time' is often used by modern sociologists in connection with the relationship between working parents and their children. The quality of time spent together is not determined by the clock but rather upon the fulfillment of the needs which vary from child to child, from age to age." *Id.*

The trial court's judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.

LYNCH, P.J., and RAHMEYER, J., concur.