J.E. EVANS, Jr., and Mamie Childs,
Plaintiffs–Respondents,

v.

FIRSTFLEET, INC., and Adara L.
Smith, Defendants–Appellants.

No. SD 30624.

Missouri Court of Appeals,
Southern District,
Division One.

June 23, 2011.

Hal D. Meltzer, Shawn M. Rogers, and Jonathan E. Benevides, Baker Sterchi Cowden & Rice, Kansas City, Missouri, for Appellants.

Edward Hershewe, Alison, Hershewe, and Erica Mynarich, The Hershewe Law Firm, P.C., Joplin, Missouri, for Respondents.

GARY W. LYNCH, Judge.

FirstFleet, Inc. and Adara L. Smith (collectively, "Defendants") appeal the trial court's wrongful-death judgment in favor of James Edward Evans, Jr. ("Evans"), and Mamie Childs (collectively, "Plaintiffs"). Defendants challenge the trial court's failure to enter remittitur or grant a new trial, claiming the jury's verdict was excessive. They also challenge the trial court's exclusion of certain testimony by Tracy Hancock. Finding no error as alleged, we affirm.

### Factual and Procedural Background

James Edward Evans ("Decedent") was fatally injured on July 17, 2007, in Newton County, in a collision with a tractor-trailer owned by FirstFleet, Inc., and operated by Smith. Decedent's son, Evans, and mother, Childs, filed a wrongful-death action, *see* section 537.080, alleging that Defendants' negligent conduct contributed to the death of Decedent and requesting judgment for damages, including punitive damages.[1]

Thereafter, Tracy Hancock, who alleged she was "the surviving spouse" of Decedent, moved to intervene as a party-plaintiff, "as a matter of right, pursuant to § 537.095, RSMo." Her motion to intervene, opposed by all parties to the action, was denied upon the trial court's finding that Hancock failed to meet her burden of proving that she and Decedent established a common-law marriage while residents of the state of Texas.[2]

Just before the start of the jury trial, Defendants admitted negligence and causation, Plaintiffs abandoned their claim for punitive damages, and the parties stipulated to try the action on the sole issue of damages. The jury returned a verdict in favor of Plaintiffs, awarding $1,000,000.00 in compensatory damages for the death of Decedent. The trial court entered judgment apportioning the damages in equal amounts to each plaintiff.

Defendants timely filed a "motion for remittitur or, in the alternative, for a new trial," claiming that the jury's verdict was excessive and exceeded fair and reasonable compensation for Plaintiffs' losses. Defendants further asserted that the verdict was "engendered by jury misconduct and/or the trial court erred in excluding certain evidence." Defendants' motion was overruled by operation of Rule 78.06.[3]

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. Hancock has not appealed the trial court's denial of her motion to intervene.

3. All rule references are to Missouri Court Rules (2011). Rule 78.06 provides that if the trial court does not rule on an authorized post-trial motion "within ninety days after the date the last such timely motion is filed[,]" the motion is overruled for all purposes. "The

Defendants timely appealed and present three points relied on. We discuss those points in the order presented. Additional facts will be elicited as necessary to address each point.

## Discussion

### Denial of Remittitur was not an Abuse of Discretion

In Point I, Defendants contend that the trial court erred in denying Defendants' motion for remittitur or, in the alternative, for a new trial because the verdict exceeded fair and reasonable compensation for Plaintiffs' loss, in that the verdict "was almost exclusively for noneconomic loss" and "exceeds the verdicts reached in similar wrongful death actions involving motor vehicle accidents[.]"

Under this point, Defendants are essentially challenging the trial court's denial of their motion for remittitur, as no trial misconduct or error is alleged. Generally, when an excessive verdict is the result of an honest mistake by the jury in weighing the evidence of the nature and extent of injuries and awarding disproportionate damages, it is appropriate that the trial court order remittitur, rather than a new trial. *Woods v. Friendly Ford, Inc.,* 248 S.W.3d 665, 678 (Mo.App.2008). Remittitur is provided for under section 537.068. "A new trial is not required because the jury is not guilty of misconduct, only an honest mistake as to the nature and extent of the injuries." *Lindquist v. Scott Radiological Group, Inc.,* 168 S.W.3d 635, 646 (Mo.App.2005). As Defendants do not assert any claim of trial or jury misconduct under this point, we will limit our review to the trial court's denial of their motion for remittitur.

"The jury is given a large amount of deference in determining a party's injuries." *McGathey v. Davis,* 281 S.W.3d 312, 320 (Mo.App.2009). This Court will not disturb a jury's verdict in assessing damages unless it is grossly excessive or inadequate. *Barnett v. La Societe Anonyme Turbomeca France,* 963 S.W.2d 639, 656 (Mo.App.1997). "Since the appellate court does not weigh the evidence, it is limited to inquiring whether the jury's verdict is supported by substantial evidence, or in other words, 'whether the amount of the verdict is responsive to the evidence on the issue of damages.'" *Heins Implement Co. v. Mo. Hwy. & Transp. Comm'n,* 859 S.W.2d 681, 692 (Mo. banc 1993) (quoting *Nichols v. Blake,* 395 S.W.2d 136, 141 (Mo.1965)).

While the jury is primarily responsible for assessing damages, if the trial court finds the jury's verdict is excessive, it may order remittitur, as authorized by section 537.068. *Brown v. Cedar Creek Rod & Gun Club,* 298 S.W.3d 14, 21 (Mo. App.2009). "The trial court has broad discretion in ordering remittitur because the ruling is based upon the weight of the evidence, and the trial court is in the best position to weigh the evidence." *Barnett,* 963 S.W.2d at 656. A trial court's decision on remittitur is reviewed for abuse of discretion. *Collier v. City of Oak Grove,* 246 S.W.3d 923, 925 (Mo. banc 2008). A trial court is said to have abused its discretion when its ruling is against the logic of the circumstances and shows a lack of consideration. *Burrows v. Union Pac. R.R. Co.,* 218 S.W.3d 527, 533 (Mo.App.2007). However, where reasonable persons could differ on the propriety of the ruling, it cannot

legal effect of withholding a ruling is to deny the motion." *Madrigal v. Larned,* 931 S.W.2d 925, 926 (Mo.App.1996).

be said that the trial court abused its discretion. *Id.*

"'Missouri appellate courts no longer engage in close scrutiny of the amounts awarded by juries for personal injuries since the trial court is in a much better position than we are to assess the verdict.'" *Henderson v. Fields,* 68 S.W.3d 455, 485 (Mo.App.2001) (quoting *Lay v. P & G Health Care, Inc.,* 37 S.W.3d 310, 333 (Mo.App.2000)). In determining whether a verdict is excessive, no precise formula exists. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 211 (Mo. banc 1991). Each case must be examined on its own facts. *Id.* A verdict is deemed excessive when it exceeds fair and reasonable compensation for the plaintiff's loss or damages. *Johnson v. Allstate Indem. Co.,* 278 S.W.3d 228, 236 (Mo.App.2009). Our review of the evidence is limited to the evidence that supports the verdict, and we exclude the evidence that disaffirms it. *Coggins v. Laclede Gas Co.,* 37 S.W.3d 335, 343 (Mo.App.2000). Only when the verdict is manifestly unjust will we exercise our power to interfere with the judgment. *Strong v. Am. Cyanamid Co.,* 261 S.W.3d 493, 521 (Mo.App.2007).

Typically, courts evaluate the reasonableness of compensatory damages based on the following factors: "(1) loss of income, both present and future; (2) medical expenses; (3) plaintiff's age; (4) the nature and extent of plaintiff's injuries; (5) economic considerations; (6) awards approved in comparable cases; and (7) the superior opportunity for the jury and the trial court to evaluate plaintiff's injuries and other damages." *McCormack v. Capital Elec. Constr. Co., Inc.,* 159 S.W.3d 387, 395 (Mo.App.2004).

"In ascertaining the amount of compensatory damages the jury would have awarded in this case, the evidence applicable to the wrongful-death statute is considered." *Letz v. Turbomeca Engine Corp.,* 975 S.W.2d 155, 176 (Mo.App.1997). Relevant here, section 537.090 [4] provides that in wrongful-death actions,

the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, but damages for grief and bereavement by reason of the death shall not be recoverable....

Here, the jury awarded Evans and Childs $1,000,000.00 as compensatory damages. The trial court apportioned the award equally between both plaintiffs. Defendants argue that there was no evidence that either plaintiff "suffered any substantial compensable non-pecuniary loss" as "the only evidence presented regarding potential economic loss suggest[s]

economic loss to each [plaintiff] in the amount of $50 to $100 per month, which is less than $2,5000 per year combined." Defendants seek "to emphasize the fact that essentially the entire verdict award was given to compensate for non-economic loss." Thus, they contend, "in light of the evidence that was presented on the issue of the relationship between [Plaintiffs] and the decedent, the overall damage award far exceeds that which is just and reasonable to compensate for their non-economic loss." Defendants premise this argument, without reference to and unanchored by our standard of review, on their contention that there was not evidence of a close relationship between Plaintiffs and Decedent other than self-serving testimony from Plaintiffs or their family members and that contrary evidence was produced via testimony from Tracy Hancock.

■■■ While Defendants maintain that the evidence concerning economic losses by reason of Decedent's death established a loss of less than $2,500.00 per year, "there is no bright-line rule that non-economic damages cannot exceed economic damages by any certain multiplier or that damages are to be determined by an arbitrary mathematical formula." *Knifong v. Caterpillar, Inc.*, 199 S.W.3d 922, 930 (Mo.App.2006). "A factor to be considered in evaluating damages under the Wrongful Death Act is potential financial aid by the decedent, which can be shown through evidence of the decedent's health, character, talents, earning capacity, life expectancy, age and habits." *Barnett*, 963 S.W.2d at 657. "[N]on-economic losses for wrongful death require this court to properly consider the reasonable value of services, consortium, companionship, comfort, instruction, guidance, counsel, training and support[ ]" denied Plaintiffs by reason of Decedent's death. *See id.* at 658.

The evidence, viewed in the light favorable to the verdict, *Brown,* 298 S.W.3d at 21, established the following. At the time of Decedent's death in November 2007, Decedent was sixty years old, Evans was forty years old, and Childs was eighty years old. Decedent's life expectancy at the time of his death was 18.2 years. Decedent, who was a truck driver, resided in Neosho, and Plaintiffs lived in Pine Bluff, Arkansas. Decedent was the oldest of six children. When his father died in 1959, Decedent was eleven years old and thereafter assumed a great deal of responsibility, including financial, for his mother and siblings. Decedent joined the military following high school, later married in 1965, and had two sons, one of whom died in infancy. Decedent's wife died in 1989, leaving Decedent to raise his surviving son primarily by himself.

Patricia Johnson, Decedent's sister, testified regarding the challenges Decedent met in raising Evans, whom she described as "a little challenged" and as having "a slight mental disability." Evans was forty-three years old at the time of trial and continued to require assistance managing his life and finances. Decedent, she testified, helped Evans "manage his life[,]" a function that she has taken on following Decedent's death and which she described as "quite a challenge." She explained that Decedent could calm Evans at times when Evans became confused and upset. Decedent also managed Evans's finances until 2002, at which time Ms. Johnson agreed to help and began paying Evans's bills and budgeting his money. Evans's income is derived from Social Security disability benefits. Evans left high school after completing the ninth grade.

Evans testified that Decedent raised him and helped him deal with his issues. He gets confused and then becomes upset at times, and he had a "nervous break-

down" about three years before the trial. Evans used to call Decedent to help him and to help his son with homework. He misses Decedent and now has no one else to talk to. Had it not been for Decedent, Evans believed he would be "locked up or dead somewhere."

Decedent's brother, Kenneth, testified that Decedent had expressed his concern for Evans and how he would be cared for with Decedent away from home and driving all of the time, and he asked Kenneth to keep him informed of Evans's situation.

Evans has a son, James Edward Evans III ("Junior"), who lives with him. At the time of trial, Junior was sixteen years old. Kenneth testified that Junior, too, is disabled and functions at a third- or fourth-grade level. Ms. Johnson handles finances for Junior, who also receives disability benefits. Junior testified that Decedent took care of him, "took [him] in" and "did a whole bunch of stuff for [him]."

Portions of Childs's deposition were read into the record at trial. Childs had suffered a major stroke followed by subsequent TIAs and has some difficulties with her memory. Decedent and Childs "were best friends" and "extremely close." There was testimony that Decedent "was kind of her favorite[,]" and that "[h]e was everything to her." They had "a special relationship." She relied on Decedent to do handyman chores for her when he visited, including minor repairs, mowing the yard, trimming hedges, and fixing the dishwasher. Decedent replaced her air conditioner when it quit working. She would make a list of jobs that she needed him to do, and he would do the work. If she needed something, Decedent would try to help, and she depended on him to help her. Childs testified that Decedent always gave Evans money and gave her money on a monthly basis. Sometimes he gave her $50.00; sometimes he gave her $100.00.

Other family members testified that following Decedent's death, Childs is "different," "so hurt," and misses Decedent.

 "[T]here is no fixed measure or standard available to determine damages for emotional injury." *A.R.B. v. Elkin*, 98 S.W.3d 99, 104 (Mo.App.2003). "Damages need not be proven with exact certainty, but rather it is the fact of damages, not the amount, that must be proven with reasonable certainty." *Id.* at 104–05. "The matter of fixing damages rests in the sound discretion of the trial court but requires the weighing of the relevant facts which show that damage occurred." *Id.* at 105. "'[W]hen the verdict reached by the jury has the approval of the trial court, its discretion is practically conclusive.'" *Knifong*, 199 S.W.3d at 932 (quoting *Thornton v. Gray Auto. Parts Co.*, 62 S.W.3d 575, 580 (Mo.App.2001)).

 Section 537.090 "is clear that in determining damages, the fact finder considers losses with references to the particular persons on whose behalf the suit was brought and the relationship of the deceased with those particular persons." *Call v. Heard*, 925 S.W.2d 840, 851 (Mo. banc 1996). "In other words, an element of the total damages is based upon the relationship between the deceased and each individual party to the action." *Id.* Furthermore, here, there were two proper plaintiffs, which could "work to increase the total compensatory award." *See Barnett*, 963 S.W.2d at 658.

 The physical, emotional, and psychological relationship between a parent and child must be considered when computing the loss of consortium for the loss of a parent for a child or the loss of a child for a parent. *Henderson*, 68 S.W.3d at 486. Defendants focus on non-economic factors from the perspective of Decedent, arguing that Evans and Childs "did not

have a particularly close relationship with the decedent[,]" and that Decedent did not see his son or mother very often and seldom talked to either by telephone. This argument, in addition to ignoring and contravening the standard of review applied by this Court mandating that we view the evidence and inferences drawn from that evidence in the light most favorable to the judgment, ignores the plain language of section 537.090 that requires the court to consider the "reasonable value of services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support *of which those on whose behalf suit may be brought* have been deprived by reason of such death." "The statute requires the court to consider what the [plaintiff] has been deprived of by reason of decedent's death, not only what the decedent has failed to provide to date." *Banner ex rel. Bolduc v. Owsley*, 305 S.W.3d 498, 503 (Mo.App.2010). Applicable to Evans's situation, "[t]he benefits flowing to a child from the relationship with his . . . father and the correlative loss sustained by reason of the father's death are not always susceptible of measurement simply by reference to the frequency of contact and the time of association." *See id.* We do not see why this observation is not equally applicable to Childs and her relationship with Decedent.

Defendants attempt to further support their claim that the verdict was excessive by comparing awards in purportedly comparable cases in the metropolitan Kansas City area and throughout the state of Missouri. These comparisons, Defendants allege, "clearly demonstrate that the jury's verdict in this case was excessive." However, Defendants have cited only two Missouri appellate cases. A verdict in *Hoover v. Brundage–Bone Concrete Pumping, Inc.*, 193 S.W.3d 867 (Mo.App.2006), was reversed and remanded on appeal to allow the defendants to amend their answer to

plead a setoff, and no issue of remittitur was raised or decided. In the only other appellate case cited by Defendants, *Murphy v. Riverside Transport, Inc.*, 277 S.W.3d 738 (Mo.App.2008), the jury's verdict was affirmed by order pursuant to Rule 84.16(b), absent any indication that the verdict was reviewed on a claim that it was excessive.

All of the other cases cited by Defendants are purported to be unreported circuit court cases. Defendants derive the information regarding those cases from documents contained, as pages 11 through 27, in the appendix of their opening brief. Their brief, however, has no citations to where these documents are contained in the record on appeal. Rule 84.04(i) requires that "[a]ll statements of fact and argument shall have specific page references to the legal file or the transcript." We cannot find these documents in the record on appeal. Rule 84.04(h), which requires an appendix and directs what should or may be included in the appendix, does not authorize inclusion of evidence outside the record on appeal. *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 823 (Mo. banc 2011). " 'The mere inclusion of documents in an appendix to a brief does not make them part of the record on appeal.' " *Id.* (quoting *Washington v. Zinn*, 286 S.W.3d 828, 831 (Mo.App.2009)). We cannot and will not consider documents outside the record. *See C.M.B.R.*, 332 S.W.3d at 823.

While it is generally stated that appellate courts may look to "awards given and approved in comparable cases," when deciding whether a verdict is excessive, we are persuaded that the comparable or similar cases referred to are those cases which have been judicially reviewed and decided on appeal. *See Schaefer v. Transamerican Freight Lines*, 173 S.W.2d 20, 24 (Mo.

1943) ("Prior decisions are advisory....."); *Sanders v. Ill. Central R.R. Co.*, 364 Mo. 1010, 270 S.W.2d 731, 740 (Mo. banc 1954) (due regard must be given to "the size of awards permitted to stand in comparable cases under comparable circumstances."); *Carnes v. Kansas City Southern Ry. Co.*, 328 S.W.2d 615, 623 (Mo.1959) ("cases previously decided should be of some assistance[.]"); *Roberts v. Carter*, 234 S.W.2d 324, 328 (Mo.App.1950) ("we should consider the amounts of approved verdicts in cases of similar nature."); *Barnett*, 963 S.W.2d at 657 ("awards given and approved in comparable cases"); *Knifong*, 199 S.W.3d at 928 ("awards approved in comparable cases").

 Furthermore, "[d]ecided cases can be only advisory for it is impossible to lay down any hard and fast rule that will govern every case." *Cason v. Kansas City Terminal Ry. Co.*, 123 S.W.2d 133, 141 (Mo.1938). "Although awards given and approved in comparable cases is a factor to be looked at in considering remittitur, ... such comparison is not conclusive as to whether or not the award is 'so grossly excessive that it shocks the conscience and convinces this court that both the trial judge and the jury have abused their discretion.'" *Redfield v. Beverly Health & Rehab. Servs., Inc.*, 42 S.W.3d 703, 713 (Mo.App.2001) (quoting *Botanicals on the Park, Inc. v. Microcode Corp.*, 7 S.W.3d 465, 470 (Mo.App.1999)). "The test ... is whether the amount awarded is manifestly unjust." *Gomez v. Constr. Design, Inc.*, 126 S.W.3d 366, 376 (Mo. banc 2004). "[T]he trial court is in the best position to determine whether the evidence supports the jury's assessment of damages as being fair and reasonable compensation, which would include the weight to be given the range of awards deemed reasonable in similar cases, and that in the absence of an abuse of discretion, an appellate court must defer to the judgment with respect to the issue of remittitur." *Knifong*, 199 S.W.3d at 930. Here, we cannot say that the jury's assessment of damages and the trial court's denial of remittitur resulted in abuses of discretion, and Defendants have not demonstrated that the award was excessive. Point I is denied.

### Denial of New Trial was not an Abuse of Discretion

 In their second point relied on, Defendants assert that the trial court erred in denying their motion for remittitur, or, in the alternative, for a new trial because the excessive verdict "was engendered by jury misconduct or mistake in considering [Plaintiffs'] attorney's fees in the award." Defendants contend that "[t]hroughout the trial, [Plaintiffs'] counsel indirectly suggested to the jury that Plaintiffs should be awarded attorney's fees." We set forth that portion of Defendants' argument below:

> During voir dire, [Plaintiffs'] counsel stated that voir dire was a little late in getting started because, "the defendant[s] in this case just moments ago ... admitted for the first time that they were negligent in the wreck and that they caused [Decedent's] death." This statement served no purpose other than to insinuate to the jury that plaintiffs and their attorney had spent a great deal of time and money fighting the issue of liability. Additionally, during closing arguments, [Plaintiffs'] counsel explained to the jury that [Plaintiffs] were forced to spend time and resources opposing the [decedent's] live-in girlfriend, Tracy Hancock's, attempt to intervene in the action. The effect of these references was to again impress upon the jury that [Plaintiffs] and their attorneys had incurred additional expense and time during the litigation of the lawsuit due to Tracy Hancock's at-

tempted intervention. These statements were not relevant or probative in any way to the issues at the trial of this case and apparently had the effect of prejudicing the jury into believing that [Plaintiffs] should be compensated for their attorney's fees.

The cumulative effect of counsel's statements was to confuse the jury, as evidenced by the jury's inquiry as to how attorney's fees could be awarded. During its deliberations, the jury asked the court the following question: "Are lawyer fees paid out of the award, or can we give an award plus attorney fees." The court responded to the jury's inquiry stating, "you are to be guided by the instructions." Despite the court's answer, it is clear from both the question and the excessive amount of the award, that the jury may have been influenced by [Plaintiffs'] counsel's statements and/or otherwise impermissibly considered and included attorney's fees in the award.

(Internal citations to transcript omitted).

Under this point, Defendants cite the case of *Willman v. Wall,* 13 S.W.3d 694, 699 (Mo.App.2000), for the proposition that "[a]n excessive verdict resulting from jury bias and prejudice requires a new trial." Defendants further argue that "the award was prejudiced by the jury's misconduct, and this Court should order a new trial."

■ In cases where a jury has been biased by trial error or misconduct and awards grossly excessive damages, the grant of a new trial is appropriate. *Knifong,* 199 S.W.3d at 927. Where an excessive verdict is the result of trial error or misconduct, the verdict "is prejudiced and can only be remedied with a new trial." *Barnett,* 963 S.W.2d at 655. In such a case, actual trial error must be shown; "the size of the verdict alone will not establish the requisite bias, passion, and

prejudice of the jury sufficient to order a new trial for an excessive verdict." *Knifong,* 199 S.W.3d at 927. The party challenging the verdict must also demonstrate that the verdict was glaringly unwarranted. *Henderson,* 68 S.W.3d at 484.

■ A trial court's denial of a motion for new trial is reviewed for abuse of discretion, which is the same standard of review on appeal of a trial court's denial of remittitur. *Burrows,* 218 S.W.3d at 533. Under this standard, as stated previously, we will reverse a trial court's decision as to either only if there is a substantial or glaring injustice. *Id.*

■ When an appellant claims that the jury was biased by trial misconduct and awarded a grossly excessive verdict, the party challenging the verdict must demonstrate that actual trial error or some misconduct of the prevailing party was responsible for prejudicing the jury. *Woods,* 248 S.W.3d at 679. "Whether trial misconduct exists such that it engendered passion and prejudice on the part of the jury is left largely to the discretion of the trial court." *Barnett,* 963 S.W.2d at 655. "The trial court had every opportunity to see and observe the conduct of plaintiffs' counsel[ ] and was aware of the circumstances surrounding counsels' actions as well as the general atmosphere of the trial." *Id.*

Initially, we interpreted Defendants' claim in their second point to allege misconduct on the part of Plaintiffs' counsel in misleading the jury, and Plaintiffs apparently interpreted it similarly, based upon their response. However, in their reply brief, Defendants contend that they do not allege that Plaintiffs' counsel committed any misconduct during voir dire and closing argument. Rather, Defendants "simply offer [Plaintiffs' counsel's] statements to explain how the jury became justifiably

confused[ ] and mistakenly believed that attorney's fees should be considered in the award." Defendants contend that "it is not necessary for the court to speculate or hypothesize about what the jury meant[ ] or its reasoning.... The jury's question makes it clear that the jury was going to award attorney's fees one way or another; either as part of the award, or in addition to the award, if permitted to do so in a subsequent award." Based upon this reply, with Defendants conceding no trial error occurred, Defendants are essentially limiting their claim of error to their interpretation of the jury's inquiry alone.

Appellants cite to *Boney v. Worley*, 261 S.W.3d 641 (Mo.App.2008), as support for their contention that "the jury clearly indicated its thoughts when asking the attorney's fees question, whether influenced by earlier statements of Respondents' attorney or not." Appellants further assert that "[t]he jury's question makes it clear that the jury was going to award attorney's fees one way or another; either as part of the award or in addition to the award for compensatory damages."

In *Boney*, the jury had returned a verdict for the plaintiffs but assigned no fault to the defendants and no damages for the plaintiffs on all charges except for the wrongful death of one Odie Boney. After the verdicts were resubmitted to the jury, it returned with an assignment of fault but assigned no damages. In addition to a motion for judgment notwithstanding the verdict to assign damages, which was denied, Plaintiffs filed a motion for additur or, alternatively, for a new trial solely on the issue of damages. The trial court denied both but granted a new trial on all issues because "the amount of damages was unfair and the verdicts were inconsistent because the jury assigned liability to the defendants but found no damages." *Id.* at 645.

On appeal, the plaintiffs argued that additur should have been applied. *Id.* at 649. The Western District of this Court disagreed, finding that the trial court had granted a new trial following the return of inconsistent jury verdicts on the basis that the verdict was against the weight of the evidence because the jury failed to award any damages " 'despite the unequivocal evidence of injury causally connected to the accident.' " *Id.* at 648. One of the stated reasons for the trial court's grant of a motion for a new trial on all issues "was its determination that the jury had considered insurance payments in reaching its verdicts." *Id.* at 649. "Although no information about insurance was presented, the jury indicated its thoughts when it asked for information about the insurance during its deliberations." *Id.* In affirming the trial court's decision on this issue, the appellate court deferred to the trial court's "better position to determine whether the jury was biased in this process; by granting a new trial, the trial court indicated that the jury's verdict was biased, and the remedy is a new trial." *Id.*

Here, as did the Court in *Boney*, we believe that the trial court was in a better position to determine whether the jury was biased or confused by counsel's comments. The Court in *Boney* deferred to the trial court's express determination "that the jury had considered insurance payments in reaching its verdicts." *Id.* We do not have that situation here. The jury inquired, "Are lawyer fees paid out of the award, or can we give an award plus attorney fees?" The trial court responded, "You are to be guided by the instructions." We presume the jury followed the court's instructions. *Arkansas–Missouri Power Co. v. Haines*, 592 S.W.2d 883, 885 (Mo.App.1980). In the absence of any evidence that the jury did otherwise, Defendants' claim of jury misconduct is based on nothing more than

mere conjecture and speculation, which is no basis for us to find an abuse of the trial court's discretion in denying their new trial motion. Point II is denied.

### Defendants Fail to Show Prejudice by Exclusion of Evidence

■■■ For their third point on appeal, Defendants point relied on states, in its entirety, that "[t]he trial court erred in excluding the proffered testimony and altering the admitted testimony of Tracy Hancock regarding decedent's relationship with [Evans]."

Rule 84.04(d) requires that a point relied on shall "state concisely the legal reasons for the appellant's claim of reversible error" and "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1)(B) and (C). Defendants' point relied on omits both of these requirements. While it states that the trial court erred, it does not explain why, leaving this Court to speculate regarding legal reasons that apply and the context of the case that makes them applicable. "A deficient point relied on forces us 'to search the argument portion of the brief or the record itself to determine and clarify the appellant's assertions, thereby wasting judicial resources, and, worse yet, creating the danger that the appellate court will interpret the appellant's contention differently than the appellant intended or his opponent understood.'" *Riley v. Headland,* 311 S.W.3d 891, 893 (Mo.App. 2010) (quoting *Moran v. Mason,* 236 S.W.3d 137, 141 (Mo.App.2007)). This Court will not speculate as to the legal reasons for Defendants' claim under this point, as to do so would be impermissible advocacy by this Court. *See White v. White,* 293 S.W.3d 1, 13 (Mo.App.2009).

■■■ We note *ex gratia,* however, that regardless of any legal reason for the claimed error, Defendants have not demonstrated how they were prejudiced by the exclusion of the evidence upon which they base their complaint. The admission or exclusion of evidence lies within the sound discretion of the trial court, and we will not disturb the trial court's ruling absent an abuse of discretion. *Nelson v. Waxman,* 9 S.W.3d 601, 603 (Mo. banc 2000). Abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful deliberation. *Peters v. ContiGroup,* 292 S.W.3d 380, 392 (Mo.App.2009). Defendants must demonstrate prejudice, not mere error, and reversal is ordered only if the error was so prejudicial it deprived the defendant of a fair trial. *Id.*

There was evidence admitted that Decedent was disappointed in Evans for the way Evans treated the rest of the family. Hancock testified that Decedent told her that Evans "seems to think that everybody is supposed to bow down to him." Hancock also testified that Decedent did not like the way Evans was taking care of Junior. Also admitted was Hancock's testimony that Evans asked Decedent to "keep [Junior] until Evans could get everything worked out." Junior's mother wanted to regain custody of Junior, and Evans wanted Decedent "to help him keep her from getting him back." However, Hancock testified, "the only way [Decedent] would take [Junior] was if [Evans] signed [Junior] over to [Decedent]."

Moreover, Defendants have failed to demonstrate that the exclusion of further testimony regarding Decedent's disappointment with his son would have affected the outcome of the trial. While, as Defendants assert, the physical, emotional, and psychological relationship—what Defendants term "the true nature" of the rela-

tionship—between the parent and child are factors that must be considered in computing loss of consortium for the loss of a parent for a child, the plain language of section 537.090 requires the court to consider what the plaintiff has been deprived of by reason of the decedent's death. *Banner*, 305 S.W.3d at 503. Thus, Decedent's disappointment with Evans had no relevance to Evans's perception of his relationship with Decedent and the value of his accompanying loss of that relationship in the absence of any evidence that Evans was aware of that disappointment and that such awareness diminished his relationship with Decedent. The "true nature" of parent-child relationships is that it is not unusual for a parent to mask their disappointment from their child because the conduct or actions giving rise to that disappointment also demonstrate the child's increased need for parental guidance and support and the child's heightened reliance upon such guidance and support. Defendants have failed to show how the admission of the excluded testimony would have affected the jury's verdict to such an extent that the trial court abused its discretion in denying Defendants' motion for a new trial. Point three is denied.

### Decision

The trial court's judgment is affirmed.

BARNEY, P.J., and BURRELL, J., concur.