# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3012
_____

Estate of Zachary Snyder; E.S., Next Friend Amanda Pryor; C.S., Next Friend
Amanda Pryor; M.L.E.M., Next Friend Amanda Pryor; M.O., Next Friend Amanda
Pryor,

*Plaintiffs - Appellees*,

v.

Steven Julian,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 11, 2014
Filed: June 18, 2015

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Zachary Snyder was shot and killed by Steven Julian, a parole officer in
Missouri, when Julian was arresting Snyder for violating terms of his parole.
Snyder's estate and his four minor children, through Amanda Pryor, their next friend,
sued Julian under Missouri's wrongful death statute and under 42 U.S.C. § 1983.

A jury returned a verdict in favor of the plaintiffs on the wrongful death claim, awarding $1 million in damages, but in favor of Julian on the § 1983 claim. The district court[1] denied Julian's post-trial motion for relief, and Julian appeals the judgment. We conclude that there was sufficient evidence to defeat Julian's motion for judgment as a matter of law, and that the damages award did not require a new trial. We therefore affirm.

I.

Because the appeal concerns sufficiency of the evidence, we recite the facts in the light most favorable to the Estate and Snyder's children. In 2007, Zachary Snyder was on parole in Missouri after serving sentences for possession of a controlled substance and automobile theft. In 2008, the Missouri Board of Probation and Parole determined that Snyder had absconded and issued a warrant for his arrest.

Julian was an employee of the Fugitive Apprehension Unit of the Board of Probation and Parole, and he was assigned to apprehend Snyder. On an evening in February 2008, Julian received a telephone call from a woman informing him that Snyder was at an apartment in Cape Girardeau, Missouri. Julian drove to the address and positioned his car in a well-lighted parking lot in front of the apartment.

Julian saw Snyder, got out of his car, and informed Snyder that he was a parole officer with a warrant for Snyder's arrest. In response to Julian's order, Snyder placed his hands on the back of Julian's car.

---

[1]The Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri, now retired, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

Julian approached Snyder, stood to Snyder's left, and placed his left hand on Snyder's left shoulder. At that point, Snyder turned to his right and began to run. After Snyder took two steps, Julian fired one shot at Snyder. The bullet entered Snyder's right back and exited his left chest area, traveling at an upward angle through his right lung, killing him.

The jury returned a verdict in favor of the Estate and Snyder's children on the wrongful death claim, awarding $1 million in damages. The jury found for Julian on the civil rights claim under § 1983. Julian moved for "judgment notwithstanding the verdict or, in the alternative, for a new trial," arguing, as relevant on appeal, that he was entitled to official immunity under Missouri law, and that he was protected from liability by Missouri's public duty doctrine. He urged alternatively that the court should grant a new trial because the damages award was excessive and unsupported by the evidence. The district court denied the motion, and Julian appeals.

II.

As a threshold matter, the Estate suggests that Julian failed to preserve the issue of whether he is entitled to judgment as a matter of law, because he did not file an adequate post-trial motion under Federal Rule of Civil Procedure 50(b). Without a post-verdict motion for judgment as a matter of law under Rule 50(b), "an appellate court is 'powerless' to review the sufficiency of the evidence after trial." *Ortiz v. Jordan*, 131 S. Ct. 884, 892 (2011). The Estate argues that Julian's post-trial motion did not satisfy Rule 50(b) because the motion sought only a new trial or a remittitur of damages.

A post-trial motion "cannot be measured by [] unexpressed intention or wants," and a motion to set aside a verdict and for a new trial is not sufficient to satisfy the rule requiring a motion for judgment as a matter of law. *Johnson v. New York, N.H., & H.R. Co.*, 344 U.S. 48, 51 (1952). At the same time, however, "[t]echnical

-3-

precision is not necessary in stating grounds for the motion so long as the trial court is aware of the movant's position," *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 197 (8th Cir. 1995) (internal quotation omitted), and "captions do not control" if the body of the motion or memorandum presents a claim. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998); *see Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1220 (10th Cir. 2013).

Before the case was submitted to the jury, Julian moved twice for a "directed verdict"—the former denomination of a motion for judgment as a matter of law under Rule 50(a)—on the issues of official immunity and the public duty doctrine. Julian then moved for judgment notwithstanding the verdict, or alternatively, for a new trial, after the verdict was returned. Although Julian's post-trial motion cited only Rule 59 concerning new trials, the motion was captioned "Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial," stated in the first paragraph that Julian was moving for "judgment not withstanding the verdict," and was filed within the time allowed by Rule 50(b). Julian again used outdated terminology—"judgment notwithstanding the verdict" rather than "judgment as a matter of law"—but that error "is merely formal." Fed. R. Civ. P. 50 advisory committee note to 1991 amendments.

In an accompanying memorandum, Julian again stated he was moving "for judgment notwithstanding the verdict," provided the legal standard for judgment as a matter of law under Rule 50(b), and argued that both official immunity and the public duty doctrine dictated a judgment in his favor. The district court understood that Julian sought judgment as a matter of law and so construed the motion in its order denying relief. *Cf. Cortez v. Life Ins. Co. of N. Am.*, 408 F.2d 500, 503 (8th Cir. 1969). Under these circumstances, we conclude that Julian satisfied the prerequisites of Rule 50(b) and preserved for appeal the applicability of official immunity and the public duty doctrine.

Curiously, Julian did not request a jury instruction on either official immunity or the public duty doctrine, so there is no jury finding on the relevant factual disputes. But Julian's failure to present the issue to a jury does not preclude appellate review of the district court's denial of the post-trial motion for judgment as a matter of law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 120 (1988); *Mid-Am. Food Serv., Inc. v. ARA Servs., Inc.*, 578 F.2d 691, 696 n.4 (8th Cir. 1978); *Hanson v. Ford Motor Co.*, 278 F.2d 586, 592-93 (8th Cir. 1960); *Coca Cola Bottling Co. of Black Hills v. Hubbard*, 203 F.2d 859, 862 (8th Cir. 1953).

## III.

Julian argues that the district court should have granted judgment as a matter of law because he was entitled to official immunity from liability under Missouri law. Public officials acting within the scope of their authority generally are not liable for injuries arising from their discretionary acts—that is, acts requiring "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued." *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. 1985). A parole officer seeking to apprehend an absconding parolee presumably engages in discretionary acts, *cf. Richardson v. Sherwood*, 337 S.W.3d 58, 64 (Mo. Ct. App. 2011), but official immunity is nonetheless unavailable to an officer who acts "in bad faith or with malice," where malice is defined to include "reckless indifference to the rights of others." *State ex. rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446-47 (Mo. 1986) (internal quotation omitted).

Julian contends that he enjoys official immunity because his shooting was a discretionary act that was not taken in bad faith or with malice. Julian asserts that he made a "split second decision to discharge his service weapon as an immediate reaction," because he believed that Snyder would attack him. Julian testified at trial that he was unsure of Snyder's state of mind, could not see Snyder's left hand, and acted only when Snyder suddenly jumped up from Julian's car and turned right,

toward Julian. Julian stated that he thought Snyder would attack him, that he fired his gun as Snyder was turning, and that Snyder began running after the gunshot.

Other testimony at trial, however, was sufficient to support a finding that Julian acted with reckless indifference to Snyder's rights. There was evidence that Snyder, unarmed, was running away from Julian and posed no threat when Julian fired the gun. Witness Leslie Tyler testified that Snyder, who had both hands on Julian's car, "turned right and began to run," and that Snyder had taken approximately two steps when Julian fired. According to Robert Ross, a retired police officer who investigated the scene, Julian admitted that Snyder "ran back towards the apartment complex, and at that time he shot [Snyder] in the back." Ross also testified Julian gave two or three different versions of Snyder's movements prior to the gunshot, and that Julian "never could describe how [Snyder] was attacking him." Expert testimony did not foreclose a finding that Snyder was running away when he was shot. The forensic pathologist who prepared Snyder's autopsy report could not "say specifically what position that body was in when the bullet passed through the body," and could not "put the gun and the victim in any specific position."

Judgment as a matter of law is warranted only when no reasonable juror, taking all reasonable inferences in the light most favorable to the opposing party, could find against the movant. *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 986 (8th Cir. 2010). We conclude that a reasonable juror could have found that Julian shot Snyder when Snyder was running away from Julian, not after Snyder turned toward Julian in a threatening manner. The evidence thus supported a reasonable inference that Julian intentionally fired his gun at Snyder "needlessly," while "manifesting a reckless indifference to the rights of others." *Twiehaus*, 706 S.W.2d at 447 (internal quotation omitted). Julian is not entitled to official immunity, because the evidence supported a finding of malice.

Julian also contends that Missouri's public duty doctrine precludes liability for a wrongful death. This doctrine provides that "a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers v. City of Farmington*, 263 S.W.3d 603, 611 (Mo. 2008) (en banc). The doctrine "negates the duty element required to prove negligence," *id*. at 612, but it is inapplicable in an intentional tort case involving a public employee who acts "in bad faith or with malice." *Id*. (internal quotation omitted). Because the evidence supports a finding that Julian fired at Snyder with malice, Julian is not entitled to judgment as a matter of law under the public duty doctrine.

IV.

Julian argues alternatively that a new trial is warranted because the damages award of $1 million was excessive and not supported by substantial evidence. The court ruled that the award was not excessive because the net amount per child of approximately $150,000 (after fees and expenses) did not exceed the estimated expenses for rearing a child, and because the jury was entitled to consider the value of lost companionship, comfort, instruction, guidance, and training as a result of Snyder's death. We apply Missouri law and review the district court's ruling for abuse of discretion. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 438 (1996). In Missouri, "[t]here is no precise formula for determining whether a verdict is excessive," but the "ultimate test is what fairly and reasonably compensates plaintiff for the injuries sustained." *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 309 (Mo. 1978). A district court abuses its discretion in denying a new trial only where the jury's award is so excessive as to be a plain injustice or a monstrous or shocking result. *Latham Seed Co. v. Nickerson Am. Plant Breeders, Inc.*, 978 F.2d 1493, 1499 (8th Cir. 1992).

In a wrongful death case, Missouri law authorizes economic damages for "pecuniary losses suffered by reason of death" and non-economic damages, including

the "reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support" that the decedent would have provided. Mo. Rev. Stat. § 537.090; *see Evans v. FirstFleet, Inc.*, 345 S.W.3d 297, 304 (Mo. Ct. App. 2011). It is proper to award damages based on "the physical, emotional, and psychological relationship between the parent and the child," *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 343 (Mo. Ct. App. 2000), and damages may encompass not only what the decedent has provided to date, but also projected losses in the future. *Evans*, 345 S.W.3d at 306. That multiple children are deprived of a parent can "work to increase the total compensatory award." *Id.* at 305 (internal quotation omitted).

Missouri law allows a generous award for loss of a parent, even where the parent had infrequent contact with his children. In *Evans*, the state court of appeals affirmed a damages award of $1 million arising from a wrongful death action brought by the decedent's mother and son. The court upheld the award over objections that the decedent provided minimal economic support and seldom saw or spoke to his son. The court reasoned that "[t]he benefits flowing to a child from the relationship with his . . . father and the correlative loss sustained by reason of the father's death are not always susceptible of measurement simply by reference to the frequency of contact and the time of association." *Id.* at 306 (internal quotation omitted).

Julian asserts that a new trial is warranted because the jury's award was the product of "passion and prejudice." The damages are excessive, he contends, because Snyder spent little time with his children, was in prison for most of their lives, and had minimal future earning potential. The jury, however, heard substantial evidence of non-economic damages arising from the loss of a father. Leslie Tyler, Snyder's friend, testified that Snyder loved his children and often spoke about his middle daughter, who lived far away. Stephanie Zobrist, the mother of two of Snyder's children, testified that Snyder called her children regularly, that he was "very involved" in their daily lives, and that her children loved and missed him. Ashley

Morse, the mother of Snyder's middle daughter, testified that her daughter was "joyful" in Snyder's presence, that he had visited her and his daughter on the day he was shot, and that his daughter was in counseling for two years as a result of his death. Amanda O'Dell, who was pregnant with Snyder's youngest daughter at the time of his death, testified that Snyder visited her the day he was shot and spoke to her about naming the child. At the time of his death, Snyder was only twenty-three years old. In light of the evidence concerning Snyder's relationship with his four children, and Snyder's youth and life expectancy, we cannot say that the damages award of $1 million constituted a plain injustice or a monstrous or shocking result. The district court acted within its discretion in denying the motion for new trial.

The judgment of the district court is affirmed.

_____