# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2171
_____

Anthony Smiley

*Plaintiff - Appellant*

v.

Gary Crossley Ford, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 7, 2017
Filed: June 12, 2017

_____

Before SMITH,[1] BENTON, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

Anthony Smiley appeals from the district court's[2] order denying his renewed motion for judgment as a matter of law, or in the alternative, for a new trial on his claim that Gary Crossley Ford, Inc. (GCF) violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq*. Smiley alleged that GCF failed to clearly and conspicuously disclose the annual percentage rate (APR) and finance charge in the Retail Installment and Security Contract ("Contract") that Smiley entered into when purchasing a vehicle from GCF. A jury returned a verdict in favor of GCF. On appeal, Smiley argues that insufficient evidence exists for a reasonable jury to conclude that (1) the TILA disclosures on the Contract were clear and conspicuous, or (2) Smiley previously waived his TILA claim at mediation. He additionally argues that four district court errors entitle him to a new trial. Specifically, he asserts that the district court (1) prejudiced him by its inability to turn on "white noise" during bench conferences held to discuss his objections to certain evidence; (2) failed to sustain his objection to opposing counsel's statement in closing argument that being represented by an attorney is like "being pregnant, you are or you aren't"; (3) encouraged jury nullification; and (4) gave an erroneous answer to a jury question about whether certain evidence was part of the mediation settlement offer. We affirm.

## I. *Background*

Smiley purchased a vehicle from GCF on May 11, 2013. Smiley purchased the vehicle from GCF because it had a trade-in protection (TIP) program. This program offered the purchaser $2,500 toward any amount due on a traded-in vehicle. Smiley borrowed the purchase money from a finance company contracting with GCF, and GCF prepared the Contract for the vehicle loan. The Contract contained a section for the disclosures required by the TILA. Smiley acknowledged that he was given a copy of the Contract to take with him at the time of the transaction. Smiley conceded that

---

[2]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

he did not look at his copy at that time and that the first time that he reviewed his copy was in August 2013, three months later.

Smiley attempted to participate in the TIP program, but he was denied coverage. Smiley contacted a law firm about the issue, but it declined to represent him on the TIP matter. The law firm did, however, offer to represent him on a TILA claim regarding the Contract. Smiley's attorney sent a demand letter to GCF in October 2013, threatening to sue on Smiley's behalf for purported violations of the TILA. Smiley's counsel eventually filed suit in federal court for violations of the TILA on March 3, 2014. Smiley's complaint alleged that GCF failed to clearly and conspicuously disclose the APR and finance charge in the Contract. GCF did not become aware of the federal suit until served with process several months later in August 2014.

Meanwhile, on January 2, 2014, Smiley filed a pro se small claims action against GCF for $2,500 in the Circuit Court of Clay County, Missouri, concerning the TIP program. The small-claims petition alleged that the entity supplying the vehicle financing notified him that GCF "doesn't participate [in the TIP program] if the loan exceeds 72 months" and that Smiley's loan exceeded that term. Smiley alleged that the Contract failed to disclose that GCF "doesn't participate if the loan exceeds 72 months or only offers the program less than a 72[-]month term." According to Smiley, GCF had not contacted him to resolve the matter.

Smiley and GCF presented the TIP claim to a mediator on March 24, 2014. GCF was represented at the mediation by attorney Robb Denney. The mediator "was aware of [Smiley's] Truth in Lending claims," which had been filed in federal court, but Smiley did not tell the mediator that he "wanted those claims to be preserved"; instead, he "opted not to even discuss them any further." The mediation resulted in a tentative settlement. Following the mediation, the mediator completed a "Summary of Understanding," which Smiley and Denney signed. It provides:

Terms agreed upon between the parties:

Crossley Ford agrees to honor the trade-in protection purchased by Anthony E. Smiley and will forward a letter to that [e]ffect on their letterhead. The letter will be received by April 14, 2014. Crossley Ford will also provide a copy of the protection plan terms and a check for $45 (forty five dollars).

The Summary of Understanding directed the mediator to check boxes to indicate the settlement reached. The mediator *did not* check the box stating that "[t]he parties agree to the terms set out above that makes up a final settlement." Instead, the mediator checked the box stating that

[t]he parties agree to the terms [sic] are binding and enforceable, and request a continuance in order for the parties to complete the terms of the settlement

until . . . April 21, 2014[,] at 9:00 o'clock AM. If no parties appear on that date, the parties stipulate that this case will be dismissed. If the parties have not done all the things they have agreed to do before the court date, they agree to appear in court on the court date above so judgment can be entered.

The Summary of Understanding did not include an incorporation clause.

Smiley acknowledged that the Summary of Understanding did not set out all of the settlement's terms. He testified that he agreed to file a dismissal of his small claims action as part of the settlement but that this term was not included in the Summary of Understanding. Smiley also conceded that he made no request to exclude or carve out the TILA claim from the settlement negotiations (or any agreement that might be reached).

-4-

Denney testified that at the time of the mediation, he "did not know that [the TILA] lawsuit had been filed"; however, Denney's "discussions with [Smiley] were that the dealership want[ed] to have everything resolved with [Smiley]." Denney's concern was that Smiley had already "come up with two reasons before to try and sue the dealership, and he's going to try to come up with a third one." Denney expressed to Smiley that GCF "want[ed] to have all disputes between [Smiley and GCF] resolved." Denney testified it was "important for [him] to have everything wrapped up that day" at the mediation because "[t]hat's what [he] had been authorized to do." Denney stated that "as part of the . . . settlement negotiations," "Smiley was to dismiss his current Clay County suit and to waive what other claims he might come up with later or that he thought he had against the dealership." Denney also testified that the Summary of Understanding was missing those terms in that "[i]t doesn't list that Mr. Smiley would be dismissing his claim. It doesn't list that Mr. Smiley was waiving any other claim he would have against the dealership." When Denney signed the Summary of Understanding, his understanding of Smiley's obligations under the agreement were that

> Mr. Smiley was going to receive a letter from Gary Crossley Ford setting out that they would honor the terms of the buy back program, . . . upon receipt, and he would get a check for the amount, that he was going to be waiving his claims against the dealership arising from that transaction, and that upon receiving those items, he would contact the court and dismiss his . . . then current lawsuit.

On March 25, 2014, GCF mailed Smiley the settlement check and a copy of the TIP terms, together with a letter promising Smiley that GCF would honor the terms of the TIP program on the vehicle that he had purchased ("GCF letter"). The GCF letter advised Smiley that the settlement check and GCF's promise were being provided "in exchange for the release and waiver of any potential claim by you against us arising from your vehicle purchase of the Complimentary Trade-In Protection Program." It further advised Smiley that his "acceptance and deposit of

-5-

this check will be considered verification of your acceptance of this settlement of your claims."

Smiley admitted receiving the March 25, 2014 correspondence from GCF. At the time that he received the GCF letter, he knew that his TILA claim arose from the same vehicle purchase that was the subject of his small claims action. Smiley waited one month before depositing the settlement check. He acknowledged that he had the opportunity to consult with his attorneys during that time and that he ultimately decided to deposit the check.

In August 2014, three months after the settlement, GCF was served with the federal suit. In its answer, GCF pleaded the following affirmative defense to Smiley's TILA claim:

> Plaintiff's claims are barred in whole or in part due as the result of Plaintiff's voluntary settlement of *Anthony Smiley v. Gary Crossley Ford, Inc.*, Clay County Circuit Court Case No. 14CY-CV00061, which resulted in the settlement, waiver, and release of Plaintiff's claims arising from the purchase of the motor vehicle at issue and said claims are further barred by the doctrines of accord and satisfaction.

The parties filed cross-motions for summary judgment, which the district court denied. The district court premised those rulings on its conclusion that disputes of material fact regarding the terms of the settlement precluded the entry of judgment as a matter of law.

The matter proceeded to a jury trial. At the close of evidence, Smiley moved for judgment as a matter of law on his TILA claim. The district court did not rule on the motion but instead took the matter under advisement. The jury rendered a verdict in GCF's favor. The jury instructions did not require the jury to first find a TILA violation before it moved on to Instruction No. 15—GCF's affirmative defense of

waiver. The verdict form simply indicates that the jury found in favor of GCF. Following the verdict, Smiley renewed his motion for judgment as a matter of law or, in the alternative, a new trial, and the district court denied the motion.

## II. *Discussion*

On appeal, Smiley argues that the district court erred in denying his motion for judgment as a matter of law or, in the alternative, a new trial. "We review *de novo* a district court's denial of a motion for judgment as a matter of law, viewing the evidence in the light most favorable to the verdict. We review a motion for a new trial for abuse of discretion." *Barkley, Inc. v. Gabriel Bros., Inc.*, 829 F.3d 1030, 1042 (8th Cir. 2016) (citation omitted).

### A. *Judgment as a Matter of Law*

Smiley argues that he is entitled to judgment as a matter of law because insufficient evidence exists for a reasonable jury to conclude that (1) the TILA disclosures on the Contract were clear and conspicuous, or (2) Smiley previously waived his TILA claim during the mediation of his TIP claim.

We begin with Smiley's contention that insufficient evidence supports a finding that he waived his TILA claim. He argues that it was improper for the district court to permit parol evidence and allow the jury to look beyond the four corners of the Summary of Understanding to determine the parties' intent. He also asserts that even if the parol evidence was proper, attorney Denney's testimony was legally insufficient to show that the parties agreed to settle the TILA claim along with the TIP claim.

Missouri law provides that a "settlement agreement . . . must be construed using ordinary rules of contract construction." *State ex rel. Riverside Pipeline Co. v.*

*Pub. Serv. Comm'n of State*, 215 S.W.3d 76, 84 (Mo. 2007) (en banc).[3] Ordinary rules of contract construction provide that "[i]n the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits evidence of prior or contemporaneous oral agreements that vary or contradict the terms of an unambiguous, final, and complete writing." *Rosenfeld v. Boniske*, 445 S.W.3d 81, 87 (Mo. Ct. App. 2014) (quoting *Poelker v. Jamison*, 4 S.W.3d 611, 613 (Mo. Ct. App. 1999)). "Before applying the parol evidence rule, a court first must determine whether a contract is integrated." *Id*.

According to Missouri law, "[a] written agreement is integrated if it represents a final expression of one or more terms of the agreement." *Id*. (quoting *State ex rel. Mo. Highway & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 489 (Mo. Ct. App. 2001)). A court determines whether a writing is integrated by "look[ing] to the face of the document itself without considering the surrounding facts and circumstances." *Id*. "If the document appears to be a complete agreement on its face, it is conclusively presumed to be the final and complete agreement between the parties." *Id*.

The inclusion of a merger or integration clause in the written contract makes "[t]he parol evidence rule . . . particularly applicable." *Id*. at 88. "Merger clauses are express statements of the merger doctrine and are intended to prevent extrinsic evidence of other agreements from influencing the interpretation of a final written contract, preserving the sanctity of written contracts." *Id*. (quoting *Johnson ex rel. Johnson v. JF Enters., LLC*, 400 S.W.3d 763, 768–69 (Mo. 2013) (en banc)).

In its order denying Smiley's motion for judgment as a matter of law, the district court found that the Summary of Understanding was not a completely integrated agreement. We likewise conclude that the Summary of Understanding is not a completely integrated agreement based on (1) the lack of a merger or integration

---

[3]The parties agree that Missouri law applies.

clause;[4] (2) the use of the term "summary"; (3) the short form of the summary comprising a single, handwritten paragraph; (4) the *unmarked* checkbox next to the statement that "[t]he parties agree to the terms set out above that makes up a final settlement"; and (5) the *marked* checkbox next to the statement that the parties had agreed to binding terms but needed more time to complete those terms.

Because the Summary of Understanding was not completely integrated, the district court did not err in admitting parol evidence at trial. The question, therefore, is whether GCF produced sufficient evidence that Smiley agreed to settle all claims against GCF, including the TILA claim. The district court instructed the jury that it must find in favor of GCF on the affirmative defense of waiver if it found:

> *First*, during mediation defendant offered to allow plaintiff to participate in the vehicle trade in program and to pay plaintiff $45.00 to settle all of plaintiff's claims relating to plaintiff's purchase of a motor vehicle from defendant; and
>
> *Second*, plaintiff understood that his acceptance of defendant's offer at the mediation would resolve all of his claims relating to his purchase of a motor vehicle from defendant; and
>
> *Third*, plaintiff accepted defendant's offer.[5]

At trial, Smiley admitted that the mediator "was aware of [his] Truth in Lending claims" and that he never told the mediator that he "wanted those claims to be preserved." Denney, GCF's counsel, expressed to Smiley that GCF "want[ed] to

---

[4]"While . . . the absence of such a [merger] clause does not preclude application of the parol evidence rule, . . . such absence is relevant in determining whether the parties intended to integrate their entire agreement into the document involved in the case." *Montwood Corp. v. Hot Springs Theme Park Corp.*, 766 F.2d 359, 362 (8th Cir. 1985) (applying Arkansas law).

[5]Smiley has not challenged these jury instructions on appeal.

have *all disputes* between [Smiley and GCF] resolved." (Emphasis added.) Denney testified that "as part of the . . . settlement negotiations," "Smiley was to dismiss his current Clay County suit and *to waive what other claims he might come up with later or that he thought he had against the dealership*." (Emphasis added.) Denney also testified that the Summary of Understanding was missing those terms in that "[i]t doesn't list that Mr. Smiley was *waiving any other claim he would have against the dealership*." (Emphasis added.)

"[V]iewing the evidence in the light most favorable to the verdict," *Barkley*, 829 F.3d at 1042, we conclude that GCF produced sufficient evidence that Smiley agreed to settle all claims against GCF, including the TILA claim. In addition to Smiley's concession that he never told the mediator that he wanted his TILA claim preserved, the jury could have credited, as appropriate parol evidence, attorney Denney's testimony that he and Smiley agreed to settle *all* of Smiley's claims against GCF. "Where conflicting evidence is presented at trial, it is the jury rather than this court which assesses the credibility of the witnesses and decides which version to believe." *Spencer v. Stuart Hall Co.*, 173 F.3d 1124, 1128 (8th Cir. 1999). "A jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony." *United States v. Hodge*, 594 F.3d 614, 618 (8th Cir. 2010).[6]

---

[6]Smiley additionally argues that the GCF letter could not constitute the offer and that its content could not be used to prove that Smiley had agreed to settle his TILA claim. He points out that the GCF letter mentions claims arising out of Smiley's purchase of the trade-in protection program and does not relate to the TILA claim. He also argues that the GCF letter was inadmissible hearsay as to what occurred at the mediation. He surmises that the jury appears to have concluded that Denney's testimony was insufficient to prove waiver given that it deliberated for almost an hour before asking the court whether the GCF letter could "count as part of the mediation offer."

GCF argues that this letter shows a course of conduct between the parties

-10-

The jury instructions in the present case did not require the jury to find a TILA violation before considering GCF's affirmative defense of waiver, and the verdict form was a general one, simply indicating that the jury found in favor of GCF without specifying on what ground. Because there was sufficient evidence to support GCF's affirmative defense of waiver, we need not reach the issue whether a reasonable jury could have concluded that GCF did not violate TILA. We therefore affirm the district court's denial of Smiley's motion for judgment as a matter of law.

B. *New Trial*

Smiley argues that he is entitled to a new trial because (1) the district court's inability to turn on "white noise" during bench conferences to discuss his objections

---

supporting its contention that Smiley agreed to settle all of his claims—including the TILA claim—as part of the mediation. GCF argues that the letter "advised Smiley that by accepting those items, Smiley was verifying that he was giving up all of his claims against GCF."

As a threshold matter, we note that Smiley stipulated to the introduction of the GCF letter. The letter says that Smiley would be waiving any potential claim "arising from [his] vehicle purchase of the *Complimentary Trade-In Protection Program*." (Emphasis added.) That qualifier seems to restrict the waiver of claims to those relating to the TIP program, which is the precise claim that Smiley brought in small claims court. The letter, therefore, actually buttresses Smiley's contention that he did not settle the TILA claim during the mediation.

Nonetheless, we find that Denney's testimony is legally sufficient evidence to show the intended terms of the settlement, which the jury could credit in determining the settlement's scope. As explained *supra*, that testimony confirms that the parties agreed to settle all claims arising out of Smiley's vehicle purchase.

-11-

to certain evidence prejudiced him; (2) the district court erred by not sustaining his objection to opposing counsel's statement in closing argument that being represented by an attorney is like "being pregnant, you are or you aren't"; (3) the district court's discretionary rulings encouraged jury nullification; and (4) the district court erred in answering a jury question about whether certain evidence was part of the mediation offer.

### 1. *White Noise*

Smiley contends that the district court abused its discretion in denying him a new trial because it lacked the ability to turn on "white noise" during the parties' bench conferences. He contends that requiring him to make objections in front of the jury during his case-in-chief was highly prejudicial because he was placed "in the uncomfortable position of having to either broadcast all of the reasons that the jury ought not to learn of particular evidence, or to make no objection at all."

As GCF points out, however, Smiley made no record in the district court of what objections he would have raised had the district court turned on "white noise" during the initial portion of the trial, nor did he make any showing as to how the absence of such objections prejudiced him. The record shows that Smiley's counsel raised at least 12 objections during the relevant portion of the proceedings. Counsel did not appear to be constrained from objecting.

Having reviewed the record, we also conclude that Smiley suffered no prejudice. Smiley has identified nothing from the record showing that the jury could understand what was being said during bench conferences. *See United States v. Schoppert*, 362 F.3d 451, 460 (8th Cir. 2004) (holding district court did not abuse its discretion when, after criminal defendant contended that jury had been tainted by its purported ability to overhear conversations at side-bar, the court instructed jurors to disregard any bench conferences that they overheard; defendant "did not submit affidavits from jurors or anybody else indicating that the jury overheard any

prejudicial statements or that the [court room's] audio system was not working properly," defendant "made no offer of proof as to what particular conversations at the bench conferences were overheard," but, rather, defendant's argument that case should be remanded "rest[ed] on his speculative theory that the white noise machine aimed at the jury must not have been functioning because the district judge, in response to [the defendant's] comments that the jury might be overhearing bench conferences, suggested to the jury that he may have been speaking too loudly and urged them to pay no attention to the conferences"). Furthermore, the district court instructed the jury that objections are not evidence and that it should "not be influenced one way or the other by objections." The jury is presumed to follow the court's instructions. *United States v. Golding*, 833 F.3d 914, 918 (8th Cir. 2016).

2. *Closing Argument*

During closing argument, GCF's counsel stated:

So, did Mr. Smiley do the things that he said he would do in the settlement? No, he didn't. So that's one inconsistency. Let's look at some of the other parts of Mr. Smiley's story that just simply don't add up or make sense. Mr. Smiley is asking you to believe that he was being candid and truthful when he told Mr. Igoe, the person he sued at first, that he wasn't represented by an attorney when, in fact, as we all know, he'd already engaged an attorney to write a demand letter and then nothing seemed to come of that at least until my client was served months and months later in August of 2014. Instead, Mr. Smiley tells Mr. Igoe, no, I don't have an attorney. That wasn't true. *It's kind of like being pregnant, you are or you aren't. You're not sort of pregnant.*

(Emphasis added.) Smiley objected to GCF's counsel's statement that being represented by counsel is like "being pregnant, you are or you aren't." The court overruled the objection.

-13-

On appeal, Smiley argues that the district court erred by not sustaining his objection to GCF's counsel's statement because the statement was unwarranted and clearly injurious to the jury's perception of his credibility. First, Smiley contends that it was proper for Smiley to portray himself as an unrepresented party at the small claims court mediation because Missouri Rules of Professional Conduct permit an attorney to represent a client on a limited basis. *See* Mo. R. Prof'l Conduct 4–1.2. Second, he asserts that allowing GCF to mischaracterize the nature of attorney–client relationships to the jury left the impression that he was lying or acting unethically.

"When a new trial motion is based on improper closing arguments, 'a new trial should be granted only if the statements are plainly unwarranted and clearly injurious and cause prejudice to the opposing party and unfairly influence a jury's verdict.'" *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 954 (8th Cir. 2014) (quoting *Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 351 (8th Cir. 2002)). It will be a "rare case[]" when this court finds that a party has "made a sufficient showing of prejudice caused by 'plainly unwarranted and clearly injurious' closing argument." *Gilster v. Primebank*, 747 F.3d 1007, 1008 (8th Cir. 2014) (quoting *Morrissey v. Welsh Co.*, 821 F.2d 1294, 1303 (8th Cir. 1987)).

We agree with the district court that even if GCF's counsel's statement was in error, the statement "was not of such a magnitude that a new trial is warranted." The statement was one passing comment made within a closing argument that comprises ten pages of the trial transcript. Additionally, counsel explained why Smiley withholding the fact that he had retained counsel was misleading; counsel stated, "[W]hen Mr. Denney said, hey, we want to resolve everything with you, that Mr. Smiley somehow says, well, I'm holding this thing back because I filed a federal lawsuit even though he didn't tell [GCF] through its attorney that he had filed that action." In short, Smiley withheld that he had retained counsel to pursue another claim against GCF.

-14-

### 3. *Discretionary Rulings*

Smiley argues that the district court's discretionary rulings created an environment of jury nullification. First, he asserts that the district court prejudiced him by preventing him from explaining the congressional purpose behind TILA in his opening statement for the purpose of framing his presentation of evidence and by rejecting his proposed jury instructions regarding the congressional intent and remedial purpose behind the Act, even though it previously said that it would give the jury instructions on the congressional purpose. Second, he argues that he objected to questions about whether he knew his APR and finance charge and that the district court prejudicially stated that it felt that it was "totally relevant" and that it would not prohibit GCF from "making sure the jury understands what his *real* complaints are." According to Smiley, these statements show that the district court was "rooting for [GCF] to prevail based on a perception that [Smiley's] TILA claim lacked legitimacy." He argues that the district court gave the jury the incorrect perception that it ought to hear whether Smiley was economically harmed by GCF's TILA violations.

Smiley has failed to show how not being allowed to argue about TILA's purpose was probative of an issue at trial, especially considering that argument of counsel is not evidence. *See United States v. Norton*, 639 F.2d 427, 429 (8th Cir. 1981) ("This court has previously held that testimony concerning the purpose of the Gun Control Act has little or no probative value in a trial for a violation of the Act."); *see also Wittenburg v. Am. Express Fin. Advisors, Inc.*, 464 F.3d 831, 838 (8th Cir. 2006) ("[A]rguments of counsel are not evidence."). Likewise, Smiley has failed to show how a proffered jury instruction about TILA's purpose was relevant in determining whether a violation of the Act had occurred.

Furthermore, Smiley has failed to show how the district court abused its discretion by admitting evidence concerning Smiley's knowledge of the APR and finance charge.

-15-

### 4. *Jury Question*

Finally, Smiley argues that the district court's response to the jury's question to the court was erroneous and alone justifies a new trial. The jury asked the court: "Per the second statement on instruction 15[,] does the [GCF] letter . . . count as part of the mediation offer[?]" Smiley argued that the settlement agreement was encapsulated in the Summary of Understanding and that the terms as stated in the GCF letter were not part of the terms of that settlement. The court responded that Smiley's argument was based on his interpretation of the facts and requested that Smiley propose an answer to the jury's question. Smiley responded by stating that the answer should be "no." The district court rejected Smiley's proposed response and instead responded, "As the trier of the facts, it is up to the jury to determine what was part of the mediation offer."

Smiley argues that the district court's response "would have misled an average juror into believing it could find that the [GCF] Letter was the mediation offer" when no dispute exists "that any 'mediation offer' necessarily had to be offered and accepted at the mediation." He asserts that the GCF letter could not constitute the offer because it was not sent until after the mediation had occurred and after a binding and enforceable settlement was formed. Smiley argues that the district court's response "gave the jury *carte blanche* to do whatever it wanted, when it was clear this was the only piece of evidence it *might* use to find against [Smiley]."

"We review a district court's response to a jury question, as well as its denial of a new trial motion, under the abuse of discretion standard." *Conley v. Very*, 450 F.3d 786, 787 (8th Cir. 2006). We find no error in the district court's response to the jury's question. The district court's response correctly advised the jury that it was the jury's role to determine what the parties had agreed to during the mediation. The response was entirely consistent with the unobjected-to affirmative-defense instruction. In relevant part, that instruction asked whether "*during mediation* defendant offered to allow plaintiff to participate in the vehicle trade in program and

to pay plaintiff $45.00 to settle all of plaintiff's claims relating to plaintiff's purchase of a motor vehicle from defendant." (Emphasis added.) It also asked whether "plaintiff understood that his acceptance of *defendant's offer at the mediation* would resolve all of his claims relating to his purchase of a motor vehicle from defendant." (Emphasis added.)

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____